IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**NORMAN R. JENKINS,**

    **Petitioner,**

v.                                Case No. 5:16-cv-04296

**D.L. YOUNG, Warden,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), and Respondent's Response, wherein Respondent moves for the petition to be dismissed, (ECF No. 12). This case is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED**, that Respondent's request for dismissal be **GRANTED**, and that this action be **DISMISSED**, with prejudice, and removed from the docket of the Court.

I.     **Relevant History**

In January 1980, Petitioner was charged with shooting a man to death in Washington, D.C. in the course of robbing him. (ECF No. 12-1 at 45). Petitioner was later

convicted of the crime, and on September 1, 1983, was sentenced by the Superior Court of the District of Columbia to a term of 20 years to life in prison for murder in the first degree while armed. He also received a concurrent sentence of 40 months to 10 years in prison for carrying a pistol without a license. (ECF No. 12-1 at 44). At the time Petitioner committed the murder, decisions regarding the parole of D. C. offenders were made by the District of Columbia Board of Parole, using guidelines generated in 1972 (the "1972 guidelines"). *See Daniel v. Fulwood,* 766 F.3d 57, 58 (D.C. Cir. 2014). Under the 1972 guidelines, a prisoner became eligible for parole upon completion of the minimum sentence imposed by the sentencing court. The guidelines contained a nonexclusive list of factors that the D. C. Board of Parole was expected to consider when determining a prisoner's suitability for release, but "contained no prescribed method for 'translat[ing] the factors into a parole release date.'" *Id.* at 59 (quoting *Phillips v. Fulwood,* 616 F.3d 577, 579 (D.C. Cir. 2010)).

In 1997, Congress enacted the National Capital Revitalization and Self-Government Improvement Act, which abolished the D. C. Board of Parole and "directed the USPC [United States Parole Commission] to conduct parole hearings for D. C. Code offenders 'pursuant to the parole laws and regulations of the District of Columbia.'" *Sellmon v. Reilly,* 551 F. Supp. 2d 66, 68 (D.D.C. 2008) (quoting the National Capital Revitalization and Self–Government Improvement Act, Pub. L. No. 105–33, § 11231(c), 111 Stat. 712, 734–37 (1997)). Three years later, in 2000, the USPC issued its own guidelines to govern decisions for D. C. offenders who became eligible for parole on or after August 5, 1998 (the "2000 guidelines"). *Id.* In contrast to the 1972 guidelines, the 2000 guidelines involved a point system based upon various factors; including the risk of recidivism (salient factor score), the presence of violence in prior offenses, and whether

the current offense involved a victim's death. "The sum of these points, called the prisoner's 'base point score,' correspond[ed] to a range of months to be served by the prisoner, called his 'base guideline range.'" *Id.* The range could be adjusted upward or downward over time to account for disciplinary infractions and to reward prisoners for "superior program achievement." *Id.* When considering parole, the USPC used the adjusted guideline range, called the "total guideline range," as the presumptive sentence that a prisoner had to serve before becoming suitable for parole. *Id.*

On May 20, 2003, after serving 237 months in prison, Petitioner had his first parole hearing. (ECF No. 12-1 at 4-9). Applying the 2000 guidelines, the USPC determined that Petitioner's total guideline range was 374-416 months in prison. The total guideline range included 240 months, which was the minimum amount of time Petitioner had to serve before he was eligible for parole, with another 110-140 months added to account for his base point score of 9, and an additional 24-36 months for disciplinary infractions incurred while in the prison facility. After conducting the total guideline range calculation, the USPC concluded that Petitioner had not served enough time to be suitable for parole and did not warrant a decision outside of the total guideline range. (*Id.*). Accordingly, Petitioner was denied parole and scheduled for a rehearing in May 2008.

On May 2, 2008, after serving 296 months in prison, Petitioner had his second parole hearing. (*Id.* at 10-16). Again applying the 2000 guidelines, the USPC calculated Petitioner's total guideline range to be 386-444 months. Petitioner's range had been adjusted upward in the five-year interim to account for additional institutional infractions. (*Id.*). Once again, Petitioner was denied parole, because he had not served enough time and did not warrant an out-of-range decision. His next parole hearing was

scheduled five years later in May 2013. (*Id.*).

Petitioner's third parole hearing was held on May 7, 2013. (ECF No. 12-1 at 17-23). By this time, his total guideline range was 398-468 months in prison. (*Id.*). Given that Petitioner had served only 356 months, and his case did not warrant a deviation from the guideline range, Petitioner was denied parole. However, because he was only 42 months shy of his minimum guideline sentence, his next parole hearing was scheduled three years later in May 2016. (*Id.*)

In June 2015, the USPC proposed changes to its rules governing parole decisions for D. C. offenders. *See* 80 FR 34111-02, 2015 WL 3645501(F.R.). Pointing to the United States Supreme Court's decision in *Garner v. Jones*, 529 U.S. 244 (2000), as well as a series of decisions rendered in the D. C. circuit, the USPC conceded that applying the 2000 guidelines to D. C. prisoners who had committed crimes prior to March 1985, might constitute a violation of the *Ex Post Facto* Clause of the United States Constitution. 80 FR 34112-02, 2015 WL 3645501. To avoid *ex post facto* problems, the USPC proposed making parole decisions for that group of D. C. offenders by using the 1972 guidelines, which were the governing guidelines in the District of Columbia prior to March 1985. The rule changes became effective October 19, 2015. *See* 28 C.F.R. § 2.80(p).

On December 2, 2015, the USPC notified Petitioner that pursuant to 28 C.F.R. § 2.80(p) he would receive an earlier parole hearing, and his case would be considered under the 1972 guidelines. (ECF No. 12-1 at 42). The notice advised Petitioner that his hearing would be held in January 2016, rather than May 2016, and outlined the factors that the USPC would consider in granting or denying parole. (*Id.* at 42-43). As previously stated, the 1972 guidelines did not employ a point system or involve the calculation of a guideline range; rather, it required the USPC to evaluate a number of factors concerning

4

the offender's pre and post-incarceration behavior and characteristics. 28 C.F.R. § 2.80(p). The notice also indicated that if parole was not granted at the first hearing, the timing of a reconsideration hearing would be at the USPC's discretion; although, ordinarily, the rehearing would occur one year later and could not be scheduled more than five years after the date of the previous hearing. 28 C.F.R. § 2.80(p).

The USPC conducted Petitioner's hearing on January 12, 2016. (ECF No. 12-1 at 44-49). Hearing Examiner Joseph M. Pacholski applied the 1972 guidelines and considered all of the factors set forth in 28 U.S.C. § 2.80(p). On January 19, 2016, the Hearing Examiner issued a hearing assessment and summary, noting that Petitioner had been in prison 388 months and had a total of 16 disciplinary events, with the last institutional infraction occurring in 2012. (*Id.*). After evaluating the other factors, the Hearing Examiner recommended that Petitioner be paroled effective October 11, 2016, at which time he would have served 397 months in prison. The Hearing Examiner added that Petitioner should be required to participate in mental health treatment for bipolar disorder and enroll in substance abuse treatment as directed by the supervising probation officer. (*Id.*).

On February 8, 2016, the USPC issued a Notice of Action related to Petitioner's January 2016 parole hearing. (ECF No. 12-1 at 50). Counter to the Hearing Examiner's recommendation, the USPC denied parole. The USPC provided the following reasons for its decision: Petitioner's past history of convictions, his history of 16 disciplinary infractions, his history of using weapons while in the community, and his continued treatment for psychological issues. The USPC concluded that these factors made Petitioner "a serious risk" and releasing him "would endanger the public safety." (*Id.*). In addition, the USPC found that Petitioner's situation warranted a rehearing beyond the

normal 12-month period and scheduled him for reconsideration in January 2018.

On May 10, 2016, Petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1). In July 2016, Respondent filed his response, and Petitioner submitted a reply memorandum on September 14, 2016. (ECF Nos. 12, 13). Therefore, the matter is fully briefed and ready for disposition.

## II. Petitioner's Grounds for Habeas Relief

Petitioner states five grounds in support of his habeas petition. (ECF Nos. 1, 2, 13). Three of the grounds pertain to the parole hearings held in 2003, 2008, and 2013. With respect to these hearings, Petitioner claims that the USPC violated the *Ex Post Facto* and Due Process Clauses of the United States Constitution by improperly applying parole guidelines that post-dated his conviction and by "double-counting" an aggravating factor. He additionally argues that the USPC erred in its parole suitability analysis by failing to factor in and consider Petitioner's positive institutional experience and rehabilitative efforts. (ECF No. 1 at 6-7; ECF No. 2 at 2-4; ECF No. 13 at 5). As to the remaining two grounds, Petitioner asserts that the 2016 decision by the USPC, which rejected the Hearing Examiner's recommendation, denied parole, and required Petitioner to serve another twenty-four months before receiving reconsideration, was arbitrary and capricious. Petitioner further contends that the USPC deprived him of due process by not applying the 1972 guidelines correctly. (ECF No. 2 at 5-6). Petitioner asks the Court to order the USPC to accept the Hearing Examiner's recommendation and grant Petitioner parole. (*Id.* at 6).

## III. Discussion

Petitioner's habeas petition contains two distinct categories of claims. First, Petitioner attacks the procedural propriety of the parole hearings held in 2003, 2008, and

6

2013. Although he does not explicitly state the relief he seeks from the Court in relation to those hearings, Petitioner clearly does not request monetary damages. Presumably, he seeks injunctive or declaratory relief; at a minimum, it appears that Petitioner wants the Court to find that the hearings were unconstitutional. Given that Petitioner cannot obtain speedier release in connection with these three hearings, this category of claim is more properly brought under 42 U.S.C. § 1983. *See Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005); *Taylor v. Craig,* No. 5:05-cv-00781, 2009 WL 900048, at *13 (S.D.W. Va. Mar. 24, 2009) (collecting cases).

Second, Petitioner challenges the correctness of the 2016 USPC decision, arguing that it was arbitrary and capricious, because the USPC disagreed with the Hearing Examiner and denied Petitioner parole. In effect, Petitioner asks the Court to judicially overrule the USPC's decision and grant Petitioner parole. As such, Petitioner seeks immediate or speedier release from detention in connection with this claim; therefore, it is properly considered in a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973).

### A. 2003, 2008, 2013 Parole Hearings

Although, as stated above, Petitioner should have asserted his claims regarding the earlier parole hearings in a § 1983 action, the Court has a duty "to identify legally cognizable claims in pro se complaints and petitions and to proceed accordingly, especially when civil rights are implicated." *Taylor,* 2009 WL 900048, at *14 (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). As this Court pointed out in *Taylor,* that duty "often involves converting habeas petitions to § 1983 actions and vice versa." *Id.*

However, in this case, the undersigned **FINDS** that Petitioner's claims related to his first three parole hearings should not be recharacterized, but should be dismissed,

because they are moot. Petitioner alleges that the three hearings violated the *Ex Post Facto* and Due Process Clauses of the United States Constitution when the USPC applied the 2000 guidelines rather than the 1972 guidelines, which were in effect at the time he committed the crimes of conviction. If Petitioner were to prevail on these claims, his remedy would not be release from custody. *Hunter v. U.S. Parole Comm'n,* 406 Fed. App'x 879, 880 (5th Cir. 2010) (citing *Wilkinson*, 544 U.S. at 82). Instead, Petitioner would only be entitled to a new parole hearing applying the appropriate guidelines. *Id.*

In January 2016, the USPC conducted a special hearing specifically to review Petitioner's suitability for parole under the 1972 guidelines. It is undisputed that the Hearing Examiner applied the 1972 guidelines and made a written recommendation to the USPC, outlining his assessment of the relevant factors contained in those guidelines. Accordingly, Petitioner has been afforded the full extent of relief to which he would have been entitled if he had succeeded on his request for injunctive or declaratory relief. Consequently, his claims related to the first three parole hearings are moot. *See Hunter,* 406 Fed. App'x at 880 (holding that if petitioner succeeded on an *ex post facto* argument "at best, he would be entitled to a new parole hearing applying the old guidelines," and because petitioner was afforded this relief, his petition was moot); *see, also, Anderson v. Reilly,* 691 F. Supp.2d 89, 92 (D.D.C. 2010) (holding that prisoner's claims for injunctive and declaratory relief were mooted when his request for parole was considered under the proper guidelines); *and Gassaway v. U.S. Parole Comm'n,* No. 3:08CV415, 2010 WL 2928554, at * 1 (E.D. Va. July 22, 2010) (finding that the USPC's provision of a parole hearing using the guidelines in effect at the time the prisoner committed the offenses mooted his *ex post facto* claim).

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). "Federal courts are prohibited under principles of justiciability from deciding cases that become moot before or during litigation." *Adams v. Duncan*, 179 F. Supp. 3d 632, 644–45 (S.D.W. Va. 2016) (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). Petitioner does not allege that the USPC intends to revert back to using the 2000 guidelines at his future parole hearings, nor does he demonstrate that he is likely to suffer "present, future, or collateral consequences" as a result of the 2000 guidelines having been used at his 2003, 2008, and 2013 parole hearings. *Id.* Therefore, Petitioner's claims related to those hearings are no longer "live" and should be dismissed.

### B. 2016 Parole Decision

Petitioner asserts two grounds in support of his challenge to the validity of the 2016 decision denying him parole. First, he contends that the USPC did not follow the "correct or proper procedures" in deciding his case. (ECF No. 2 at 5). In particular, Petitioner claims, without support, that the USPC should have applied the 1972 guideline governing parole rehearings, instead of the guideline pertaining to initial hearings. Petitioner suggests that the rehearing guideline required the USPC to "calculate a salient factor score based on static pre-incarceration factors only." (*Id.*). The undersigned **FINDS** no merit to this ground for relief.

The purpose of the January 2016 hearing was to provide Petitioner, *for the first time*, with parole consideration under the 1972 guidelines. These are the very guidelines that Petitioner claims should have been, but were not, applied in his prior hearings. Moreover, contrary to Petitioner's representation that the 1972 rehearing guideline

9

included a salient factor score calculation, decisions from the District of Columbia Court of Appeals confirm that the 1972 guidelines contained no such calculation. *See, e.g., Davis V. Henderson,* 652 A.2d 634 (D.C. 1995). As the Court of Appeals explained in *Davis,* at the time Petitioner committed his crimes, the District of Columbia Board of Parole "had no formalized scoring system, but was required by regulation to consider factors such as the inmate's offense, prior history of criminality, personal and social history, physical and emotional health, institutional experience, and availability of community resources, when exercising its discretion to authorize parole." *Davis,* 652 A.2d at 635 (citing 9 DCRR § 105.1(a)-(f) (1981)). Salient factor scores were not created until 1987 "'to guide the Board in making the decision whether to grant or deny parole.'" *Id.* (quoting *White v. Hyman,* 647 A.2d 1175, 1179 (D.C. 1994)). Accordingly, there is no factual or legal basis for Petitioner's representation. Other than Petitioner's misguided belief that the USPC improperly failed to calculate a salient factor score, he offers no argument or evidence that the USPC misapplied the 1972 guidelines.

Second, Petitioner challenges on the merits the decision made by the USPC. Petitioner argues that his due process rights were violated when the USPC rejected the Hearing Examiner's recommendation and arbitrarily denied Petitioner parole. The undersigned **FINDS** that this ground for relief is equally without merit.

"Inmates do not have a constitutional liberty interest in parole from a valid sentence." *Lumpkin v. United States Parole Comm'n,* No. CV RDB-15-2541, 2016 WL 6069491, at * 3 (D. Md. Oct. 13, 2016) (citing *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011)); *see, also, Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7 (1979) (holding that that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). While such

an interest may be established by state law, many federal courts that have addressed D. C. Code offenders have agreed that the D. C. parole system does not create a constitutionally protected liberty interest in parole. *Thompson v.. Veach,* 501 F.3d 832, 836–37 (7th Cir. 2007); *Blair-Bey v. Quick,* 151 F.3d 1036, 1047 (D.C. Cir. 1998); *Ellis v. Dist. of Columbia,* 84 F.3d 1413, 1420 (D.C. Cir. 1996); *Johnson v. Dist. of Columbia,* 67 F. Supp. 3d 157, 164 (D.D.C. Sept. 10, 2014) ("[I]t is established that D. C. prisoners do not have a constitutionally protected liberty interest in being released to parole."); *Greenwood v. English,* No. 5:13-cv-193-RS-EMT, 2013 WL 6085131, at *3 (N.D. Fla. Nov. 19, 2013) ("Because the D. C. parole statutes and regulations provide no substantive limitations on the Board's authority to grant parole, they do not create a liberty interest in parole release or the establishment of a parole date."); *Johnson v. United States,* 590 F.Supp.2d 101, 109 (D.D.C. 2008) (recognizing under D. C. law prisoner possessed no liberty interest in parole based on initial order granting him parole and that such order was subject to rescission without affording prisoner due process). The District of Columbia Court of Appeals has held similarly. *See, e.g., McRae v. Hyman,* 667 A.2d 1356, 1357 (D.C. 1995) ("The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion."). Without a protected liberty interest in parole, Petitioner certainly cannot mount a procedural due process challenge to the USPC's decision. *See, e.g., Sansotta v. Town of Nags Head,* 724 F.3d 533, 540 (4th Cir. 2013). Furthermore, absent a liberty interest in parole, the availability of a substantive due process claim to dispute the USPC's decision is dubious. *See Jackson v. Standifird,* 503 F. App'x 623, 625 (10th Cir.2012) (holding prisoner could not argue denial of procedural or substantive due process where no state created liberty interest in parole); *Johnson v. Rodriguez,* 110 F.3d 299, 308 (5th

Cir. 1997) (holding substantive due process claim challenging parole decision unavailable where prisoners had no liberty interest in parole); *Bailey v. Gardebring,* 940 F.2d 1150, 1157 (8th Cir. 1991) (rejecting substantive due process claim where prisoner had no constitutionally protected liberty interest under state law); *Harding v. Blumberg,* No. ELH-13-287, 2015 WL 302766, at *4 (D. Md. Jan. 22, 2015) (stating no substantive due process challenge exists without liberty interest in parole); *Slezak v. Glover,* No. 4:06-1122-RBH, 2008 WL 4308144, at *8 (D.S.C. Sept. 15, 2008) (same). At most, Petitioner *might* have a claim that his right to substantive due process was violated if the USPC's decision were "unconstitutionally arbitrary." *See Bell v. Anderson,* 301 F. App'x 459, 461-63 (6th Cir. 2008).

Assuming, without deciding, that Petitioner could properly raise a substantive due process claim, judicial review of that claim is decidedly narrow. The complete grant of discretion to the USPC in making parole decisions generally prevents a federal court from reviewing those decisions on the merits. *See Garcia v. Neagle,* 660 F.2d 983, 988 (4th Cir. 1981); *Allen,* 2013 WL 2458526, at *3; *Wilson-Bey v. O'Brien,* No. 2:11cv59, 2012 WL 1190898, at *3 (N.D.W. Va. Feb. 27, 2012), *report and recommendation adopted,* 2012 WL 1190896 (N.D.W. Va. Apr. 10, 2012); *Morgan v. Berkebile,* No. 5:09-cv-00966, 2011 WL 5040435, at *2 (S.D.W. Va. Oct. 21, 2011); *Wilson v. Pettiford,* No. 4:06-1616, 2007 WL 2238454, at *9 (D.S.C. July 31, 2007); *Forrester v. Garraghty,* No. 01-1366-AM, 2002 WL 32862999, at *4 (E.D. Va. Sept. 26, 2002). In *Garcia,* the Fourth Circuit held that the discretion granted to the USPC in making parole decisions under the federal parole statute, 18 U.S.C. § 4218(d), limited the review of parole decisions to whether the USPC "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations." 660 F.2d at 988. Like the federal parole statute at issue in *Garcia,* the D.C.

parole statute provides the USPC with discretion to grant or deny parole. D. C. Code § 24–404(a). The D.C. Board enjoyed similar discretion under the 1972 guidelines; indeed, "[t]hose guidelines were open ended and left the decision of whether to grant parole almost entirely to the discretion of the D. C. Parole Board." *Foster v. United States Bureau of Prisons,* 57 F. Supp. 3d 32, 34 (D.D.C. 2014).

Since *Garcia,* federal courts in this circuit have recognized that the merits of the USPC's parole decisions for D. C. Code offenders are not subject to review under the abuse of discretion or arbitrary and capricious standards.[1] *See, e.g., Holt v. United States Parole Comm'n,* No. 2:15CV529, 2016 WL 7646366, at *5 (E.D. Va. Nov. 21, 2016), *report and recommendation adopted,* 2017 WL 57133 (E.D. Va. Jan. 4, 2017); *Gibson v. Stewart*, No. CV DKC-15-3304, 2016 WL 1460489 (D. Md. Apr. 14, 2016), *appeal dismissed,* 669 F. App'x 139 (4th Cir. 2016); *Allen,* 2013 WL 2458526, at *2; *Smith v. Perdue*, No. 2:14-CV-78, 2015 WL 3746548, at *10 (N.D.W. Va. June 15, 2015) ("Therefore, parole decisions are not subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedures Act, 5 U.S.C. § 701(a)(2). Rather, judicial review is limited to a consideration of whether the USPC 'exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations.'"); *Morgan,* 2011 WL 5040435, at *2; *Al-Ami'n v. Clarke*, No. 2:13cv167, 2014 WL 549326, at *4 (E.D. Va. Feb. 11, 2014) ("Petitioner's contention that his denial of parole was ... arbitrary and capricious is not cognizable under this habeas corpus review."). Although some federal courts have

---

[1] *But see Alves v. United States Parole Comm'n,* 995 F.2d 1062, 1993 WL 212711, at *1 (4th Cir. June 18, 1993) (unpublished table decision) (stating that judicial review of USPC's decision denying parole was limited to whether decision was "arbitrary and capricious") *and Scott v. Atkinson*, No. 9:13-CV-02936-RMG, 2014 WL 5026736, at *6 (D.S.C. Oct. 6, 2014), *aff'd,* 597 F. App'x 170 (4th Cir. 2015) ("[J]udicial review of the Parole Commission's actions is a narrow one, with the test being whether the decision of the Parole Commission is arbitrary or capricious, or an abuse of discretion.") (citing *Furnari v. U.S. Parole Com'n,* 125 Fed. Appx. 435, 437 (3d Cir.2005))..

13

taken a more active role in reviewing the USPC's decisions, that has not been the usual practice within the Fourth Circuit. *See, e.g., Barnard v. Poteat,* 271 F.Supp.2d 49, 51 (D.D.C. 2002) (collecting cases from the Second, Third, and Sixth Circuits permitting abuse of discretion or rational basis review of USPC decisions).

Nonetheless, setting aside *Garcia*, it was neither arbitrary and capricious, nor an abuse of discretion, for the USPC to conclude that Petitioner was not suitable for parole despite the Hearing Examiner's recommendation. "An action of the [USPC] is arbitrary and capricious, or an abuse of discretion, when it is irrational, based upon impermissible considerations, or when it fails to comply with the [USPC's] own rules and regulations." *Uhuru v. O'Brien*, No. 2:10CV105, 2011 WL 3812602, at *4 (N.D.W. Va. Aug. 10, 2011), *report and recommendation adopted,* 2011 WL 3812664 (N.D.W. Va. Aug. 26, 2011) (citing *Zannino v. Arnold,* 531 F.2d 687, 690–91 (3rd Cir.1976)). "Pursuant to 18 U.S.C. § 4203(c), the [USPC] 'may delegate to hearing examiners any powers necessary to conduct hearings and proceedings ... and recommend disposition' of an application for parole. However, the ultimate decision as to the grant or denial of parole lies with the [USPC]. Thus, the [USPC] is under no obligation to accept the recommendation of a hearing examiner." *Alden v. U.S. Parole Comm'n*, No. 5:09CV76, 2010 WL 1257777, at *5 (N.D.W. Va. Feb. 26, 2010), *report and recommendation adopted,* 2010 WL 1257775 (N.D.W. Va. Mar. 26, 2010) (citing 28 C.F.R. § 2.23).

The USPC collected information regarding all of the relevant factors outlined in the 1972 guidelines and concluded that Petitioner's past history of convictions, prior use of weapons, and institutional infractions, combined with his psychiatric illness made him a "serious risk" and a danger to public safety. This conclusion was not irrational or based upon impermissible considerations, and the USPC fully complied with its own regulations

14

in overruling the Hearing Examiner and reaching the decision to deny parole. At the young age of 15, Petitioner began his criminal career with a conviction for robbery. Two years later, he murdered a man in the course of committing armed robbery. After the murder, but prior to his conviction and sentencing on that crime, Petitioner committed two additional offenses—possession of a prohibited weapon and possession of controlled substances—for which he received a six-year youth offender sentence. (ECF No. 12-1 at 44-45). When Petitioner was released from the youth offender sentence, he immediately began to serve the adult life sentence for murder. Between 2002 and 2012, Petitioner was found guilty of 16 institutional infractions, which included multiple instances of assault, possession of an unauthorized item, and refusal to obey orders. In addition, Petitioner was diagnosed with bipolar disorder, which required medication to stabilize his behavior. Taken as a whole, Petitioner's history of violence and his psychological status certainly provided valid reasons for the USPC's decision to deny him parole. Likewise, the USPC acted well within its authority to order a rehearing after the passage of two years, rather than after one year as ordinarily required. The 1972 guidelines explicitly provided that "'[n]otwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate.'" *Lumpkin,* 2016 WL 6069491, at *3. Consequently, the timing of Petitioner's reconsideration hearing was entirely within the discretion of the USPC.

In sum, Petitioner has not demonstrated that the USPC "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations" when it denied Petitioner parole in January 2016. *Garcia*, 660 F.2d at 988. The USPC afforded Petitioner a parole hearing, applying the proper guidelines, and provided him with a written notice adequately explaining his unsuitability for parole. "A parole review procedure complies

with the Due Process Clause when the prisoner is afforded an opportunity to be heard and, if denied parole, is provided with a statement of the reasons for the denial. *Gambrell v. Fulwood*, 950 F. Supp. 2d. 109, 117 (D.D.C. 2013), *aff'd* 612 Fed. App'x 3 (D.C. Cir 2015) (citing *Swarthout*, 562 U.S. at 220). Moreover, as discussed above, the reasons supplied by the USPC for denying Petitioner parole in January 2016 were valid and, thus, complied with principles of substantive due process. Accordingly, the undersigned **FINDS** that Petitioner is not entitled to a writ of habeas corpus.

IV. **Proposal and Recommendation**

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows:

1. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED**;

2. Respondent's request for dismissal (ECF No. 12) be **GRANTED**;

3. That this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and counsel of record.

**FILED:** September 11, 2017

Cheryl A. Eifert
United States Magistrate Judge